## H. D. BAKER v. CARR LUMBER COMPANY.

### (Filed 24 May, 1922.)

1. **Appeal and Error—Parties—Nonsuit—Partnership—Fragmentary Appeal.**

   Where the Superior Court judge has ruled upon the trial of the case that certain other parties were necessary for the prosecution of the action on the ground that they had an interest in the subject-matter as partners, and that the cause could not proceed without them, the ruling strikes to the foundation of the plaintiff's cause of action, and he may take a voluntary nonsuit and appeal without valid objection that his appeal should be dismissed as fragmentary.

2. **Same—Railroads—Timber—Right of Way—Contracts—Cutting and Delivering Timber.**

   The defendant railway company obtained a right of way through plaintiff's timbered lands, inaccessible to railway transportation, upon part consideration that the defendant would build the road and transport the
37—183

plaintiff's timber at a certain price per carload. The defendant commenced to build the road and notified the plaintiff to have his timber hauled to the right of way, and the plaintiff then contracted with another to do the cutting and hauling upon consideration of advancements, and a certain part of the proceeds of the sale of the timber, without assigning any of his rights under the contract he had made with the defendant railroad company: *Held*, error for the trial judge to hold that the contractor for the cutting and hauling the timber was a partner in the contract sued on, and this ruling striking to the root of the plaintiff's alleged cause, he was within his right in taking a voluntary nonsuit and appealing from the ruling of the trial court.

APPEAL by plaintiff from *McElroy, J.,* at December Term, 1921, of BUNCOMBE.

This is an action brought to recover damages for a breach of contract. The parties do not differ materially as to the terms of the two contracts involved; and, therefore, the following statement of the material facts will suffice to present fully the point raised by the exception: "On or about 1 October, 1919, plaintiff entered into a contract with the defendant, whereby he agreed to sell defendant a right of way for its railroad through plaintiff's land in Henderson County for the sum of $100 cash and the further consideration that defendant would furnish plaintiff sufficient cars for loading and transporting all his lumber and wood located on said tract of land from any point on said railroad where it passed through plaintiff's land to the junction point of defendant's said railroad with the line of the Southern Railway Company, and to transport said cars of lumber and wood from said points on said land to said junction point of said Southern Railway Company at the price of $10 for each car so transported." The plaintiff complied with his part of the contract, and defendant commenced grading its right of way through plaintiff's land in October, 1919, and at that time defendant notified plaintiff to cut and place his wood and lumber along the right of way, and that the railroad would be in operation and sufficient cars would be furnished plaintiff for loading and transporting his wood and timber by 1 June, 1920. The construction work was abandoned by defendant in the spring of 1920, "and they have done nothing since about laying down the rails." On 2 February, 1920, plaintiff entered into a contract with E. Penland and B. Penland, under which the Penlands were to cut, haul, and deliver to the siding of the railroad all timber, wood, etc., and as compensation were "to have one-half of all proceeds from wood, cross-ties, tan bark, acid wood, dogwood, and hickory." The contract also provided that plaintiff should make certain advancements in money to the Penlands, and that plaintiff should be reimbursed out of their part of the proceeds from sales. The plaintiff built a house and advanced about $800 to the Penlands, and a large amount of wood and

timber was cut, hauled, and stacked on defendant's right of way, and the Penlands continued to comply with their contract with plaintiff until it was definitely learned that the railroad would not be built. The wood and timber that was cut and placed at the railroad right of way, and that cut and left in the woods, and the wood still standing, was of little value without a railroad, on account of the cost of transporting and the lack of means of transportation, and plaintiff was thereby greatly damaged.

At the close of all the evidence the court held that E. Penland and B. Penland were partners with plaintiff in the logging contract, and that the Penlands were necessary and indispensable parties in the pending case, involving a breach of another and distinct contract between plaintiff and defendant, "and that in no view of the case could plaintiff recover as an individual, and that the court would charge the jury to that effect. The plaintiff never transferred or assigned any interest in the contract with defendant to either of the Penlands, and there was no evidence that the Penlands ever had any connection with or interest in the contract involved in this action.

Upon the intimation of its opinion by the court, as above set forth, and in deference thereto, and reserving its exception, the plaintiff submitted to a nonsuit and appealed.

*W. G. Fortune and Mark W. Brown for plaintiff.*
*Martin, Rollins & Wright for defendant.*

WALKER, J. The plaintiff was not bound to submit absolutely to the judge's ruling, but could except thereto and take a nonsuit, as he did, for he could not have recovered, under the judge's view of the case. It is not a case, therefore, wherein there is ground left upon which plaintiff might have succeeded in his action, the judge's ruling having "cut up his case by the roots." The procedure he adopted was the only one to which he could safely resort and save his rights.

It appears in this case that the two contracts, the one with the defendant and the other with the Penlands, were made at different times, the former having been made on 1 October, 1919, and the latter on 2 February, 1920. On their face they have no legal connection with each other. The contract with the defendant was made for the plaintiff's benefit, and not for that of the Penlands, the contract with them not being in existence at the time the other contract of 1 October, 1919, was made, and there has been no assignment of any interest in the contract by the plaintiff to the Penlands. Even if it be true that the contract of February, 1920, created a partnership between plaintiff and the Penlands, it related only to the particular transactions referred to in the contract.

It is very certain that the defendant Carr Lumber Company did not enter into any such contract, and was not a party thereto, as its contract with the plaintiff related to a separate and distinct matter, and the principles of law applicable to the two contracts are not the same, nor is the same rule of damages applicable to both. The Penlands cannot sue on the contract with the lumber company, for it has made no contract with them. They are not parties or privies to it, nor has the contract, or any part of it, been assigned to them, nor was it made for their benefit. If there has been a breach of it, the damages would go to the plaintiff. The action, therefore, must be confined to the parties named in the contract (*Whitehead v. Reddick,* 34 N. C., 95; *Hardy v. Williams,* 31 N. C., 177), not only because they are the only parties named therein, but because they are also the real parties in interest. We cannot change a contract, so as to give another a right or interest in the contract, which it does not confer, but must enforce it as we find it to be, and as the parties have made it in their agreement. *Norment v. Johnston,* 32 N. C., 89. Referring to that case, *Judge Battle* said in *Joyner v. Pool,* 49 N. C., 293, at p. 295: "The case of *Norment v. Johnston,* 32 N. C., 89, which is the only authority referred to and relied upon by the counsel for the plaintiffs, does not, in our estimation, aid their case. The principle therein decided was that one partner could not by a contract with another person charge what was known to be his individual debt to that person, upon the firm, without the consent of the other members of the firm. Surely that does not prove that an individual party to a contract can convert that contract into one with a firm, without the consent, and to the prejudice, of the other party." A contract is made only by consent or agreement of the parties to it (*Norment v. Johnston, supra*), and there is nothing here to take this case out of the rule. "There can be no contract in the true sense, that is, as distinguished from *quasi* or constructive contracts, in the absence of the element of agreement, or mutual assent of the parties. This, above all others, perhaps, is an essential element of every contract." 9 Cyc., 245. The two contracts are therefore separate and distinct, not having the same parties or the same subject-matter. The opinion expressed by the court was not well founded, and was an erroneous view of the case.

The nonsuit is set aside, and a new trial ordered.

New trial.