R. E. MENZEL, M.D. v. METROLINA ANESTHESIA ASSOCIATES, P.A. AND
H. A. FERRARI, M.D.

No. 8226SC1207

(Filed 17 January 1984)

1. **Rules of Civil Procedure § 41— nonjury trial—motion for involuntary dismissal**

    A motion for a directed verdict is proper only in a jury trial; the proper motion in a nonjury trial is one for involuntary dismissal under G.S. 1A-1, Rule 41(b).

2. **Contracts § 27.2; Master and Servant § 8— employment contracts—employer's loss of contract with another—breach of contract by employee**

    The trial court erred in finding that defendant employer breached a contract employing plaintiff as an anesthesiologist when the employer lost its contract to provide anesthesia services to a hospital even if the employer's contract with the hospital was the major inducement for plaintiff's entering the employment contract. Rather, plaintiff breached the contract when he entered into a new employment agreement with the hospital before determining whether his contract with defendant employer had been terminated.

3. **Master and Servant § 8— breach of employment contract—severance pay provision inapplicable**

    A breach of an employment contract would not trigger provisions requiring defendant employer to pay plaintiff two months severance pay if defendant terminated the contract.

4. **Master and Servant § 8— breach of contract by employee—counterclaim for prepaid insurance premiums—dismissal by court**

    The trial court properly dismissed defendant employer's counterclaim for professional liability insurance premiums it had prepaid for plaintiff prior to plaintiff's breach of the employment contract.

APPEAL by defendant from *Sitton, Judge.* Judgment entered 15 July 1982 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 14 November 1983.

Defendant appeals from a judgment awarding plaintiff $14,-333.13 for damages sustained due to defendant's breach of an employment contract entered into between the parties.

The pertinent facts are:

In 1975, defendant corporation, a North Carolina corporation, solely owned and directed by defendant Herbert Alfred Ferrari, M.D., contracted with Charlotte Memorial Hospital to perform anesthesia services. Under the contract, defendant corporation could perform services for other individuals or institutions as well as Charlotte Memorial Hospital. The contract could be terminated by either party by giving the other party at least ninety days written notice.

The contract between defendant and the hospital was in effect on 29 June 1979, when plaintiff, an anesthesiologist, entered into an employment contract with defendant, to take effect in September, 1979. The employment contract provided that plaintiff would receive a base salary of $75,000 plus certain fringe benefits and discretionary bonuses in return for rendering his medical services for the business and benefit of defendant. The contract did not specify where plaintiff would work. Paragraph four of the contract provided:

> 4. *Working Facilities.* Employee shall be furnished with offices, stenographic help, anesthesia supplies, equipment and facilities, and such other facilities and services as may be required for the performance of his duties. Employer shall also: provide Employee with adequate professional liability insurance (coverage of at least $1 million if commercially available); pay for Employee's membership in professional organizations, including the American Medical Association, State Medical Society, County Medical Society, ASA, IARS, N. C. Society of Anesthesiologists and the Medical Auxiliary; and pay for such other professional related expenses as the Board deems reasonable. All professional equipment, books, office equipment and other property furnished by Employee shall remain his individual property.

The parties' contract was for an initial one-year term, and after the first year, was to continue indefinitely subject to the contract provision for termination. Paragraph twelve, the termination provision, provided in pertinent part:

12. *Termination of Employment.* Employee and Employer shall have the right to terminate this agreement as of the last day of any month by giving written notice at least thirty (30) days prior to the proposed termination; provided, however, Employer shall have the right to terminate this agreement only upon written notification to Employee that Employer's Board of Directors, upon recommendation of the Professional Affairs Committee, has approved such termination by a unanimous vote of all members other than Employee, if a Director. Upon such termination by Employer, Employer shall pay Employee two (2) months base salary as severance pay . . . .

The parties performed the contract until February 1980. On Saturday, 9 February 1980, plaintiff was vacationing in Linnville, North Carolina, when he heard on the evening news that the contract between Charlotte Memorial Hospital and defendant had been terminated. On Sunday, 10 February, plaintiff returned to Charlotte and wrote a letter to defendant's attorney requesting his severance pay.

On Monday, 11 February, plaintiff went to work at Charlotte Memorial Hospital. Some time thereafter, plaintiff entered into a contract with the hospital to provide anesthesia services in return for compensation of $155,000 per year beginning on 10 February 1980.

On 29 February 1980, defendant wrote plaintiff a letter stating that defendant's attorneys had learned from Charlotte Memorial Hospital that on Sunday, 10 February, the hospital had offered plaintiff employment and that on Monday, 11 February, plaintiff had accepted employment with the hospital, effective retroactively as of 6:00 p.m., 9 February 1980. By accepting such employment, defendant informed plaintiff, plaintiff had terminated employment with defendant. Defendant sent plaintiff a payroll statement computed on the basis of services rendered through 9 February 1980. Said statement contained deductions for expenses prepaid by defendant for the proration of plaintiff's 1980

medical dues, plaintiff's calculator, plaintiff's February car lease, and for overage due on the car lease.

Plaintiff instituted action against defendant corporation and defendant individually, alleging, in essence, that he sustained $33,433.67 in damages due to defendant corporation's breach of the parties' employment contract. Defendant corporation counterclaimed for the unearned portion of a premium totalling $712 paid by defendant for plaintiff's professional liability insurance.

The judge, sitting without a jury, dismissed defendant's counterclaim and concluded that defendant had and plaintiff had not breached the parties' employment contract. Plaintiff was awarded $14,333.33 in damages, which covered two months severance pay and payments improperly deducted from plaintiff's last paycheck. Since defendant, Dr. H. A. Ferrari, the sole owner of Metrolina Anesthesia Associates, stipulated before trial that he would be financially responsible for any judgment plaintiff might receive, we will hereinafter refer to defendant in the singular.

*Warren & McKaig, P.A., by Joseph Warren, III, and India Early Keith, for plaintiff appellee.*

*Walker, Palmer & Miller, P.A., by James E. Walker, and June E. Jensen, for defendant appellants.*

VAUGHN, Chief Judge.

[1] Defendant contends that the trial court erred by denying its motion for a directed verdict made at the close of all the evidence. A motion for a directed verdict is proper only in a jury trial; the proper motion in a nonjury trial is one for involuntary dismissal under Rule 41(b). *Bryant v. Kelly*, 10 N.C. App. 208, 178 S.E. 2d 113 (1970), *reversed and remanded*, 279 N.C. 123, 181 S.E. 2d 438 (1971). Accordingly, we will treat defendant's motion as one for involuntary dismissal.

Rule 41(b) provides for a motion for dismissal at the close of plaintiff's evidence; it does not provide for such motion at the close of *all* the evidence. *Reid v. Midgett*, 25 N.C. App. 456, 213 S.E. 2d 379 (1975). As our Supreme Court has explained: "There is little point in such a motion at the close of all the evidence, since

at that stage the judge will determine the facts in any event. . . ." *Helms v. Rea*, 282 N.C. 610, 619, 194 S.E. 2d 1, 7 (1973), *quoting* Wright, Law of Federal Courts § 96, at 428-29 (1970). In the case *sub judice*, the trial judge entered judgment on the merits. Defendant's motion and the judge's ruling thereon were, therefore, of little consequence. *See Land Co. v. Wood*, 40 N.C. App. 133, 252 S.E. 2d 546 (1979). Defendant's first contention has no merit.

[2] Defendant next contends that the trial court's findings of fact relating to the performance and breach of the contract in dispute are not supported by adequate evidence. As to this contention, we agree.

In a nonjury trial, the court's findings of fact have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support them, even if the evidence could sustain contrary findings. *Williams v. Insurance Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975). In the case *sub judice*, the trial court, in essence, found only that defendant had and plaintiff had not breached the employment contract in dispute. There were no findings of fact as to how or in what way the breach occurred. Even so, upon review of the Record, we find *no* evidence to support the court's ultimate findings.

The evidence showed, in essence, that on Saturday, 9 February 1980, plaintiff heard on the news that the contract between Charlotte Memorial and defendant had been terminated. On Sunday, 10 February 1980, plaintiff wrote a letter to defendant's attorney, requesting severance pay owed him under the termination clause of plaintiff's contract with defendant. On Monday, 11 February 1980, without contacting defendant, plaintiff went to work at Charlotte Memorial Hospital and thereafter entered into an employment contract with the hospital, effective 9 February 1980.

Contrary to the trial judge's findings, we find the evidence shows that plaintiff, not defendant, breached the parties' contract when he went to work for and signed a new employment contract with Charlotte Memorial Hospital.

Defendant did not do or say anything prior to the time plaintiff entered into his new contract with the hospital to indicate

that the contract between plaintiff and defendant had been terminated. Termination of defendant's contract with the hospital had no effect on defendant's separate, distinct contract with plaintiff. While the contract between plaintiff and defendant provided that plaintiff would be furnished with offices, supplies, equipment, and facilities, it did not specify their location. The general rule is that the breach of one contract does not justify an aggrieved party in not performing another separate and distinct contract. *National Farmers Org'n v. Bartlett & Co., Grain,* 560 F. 2d 1350 (8th Cir. 1977); 3A A. Corbin, Contracts, § 696 (1960); *Cf. Baker v. Lumber Co.,* 183 N.C. 577, 112 S.E. 241 (1922).

Even if defendant's contract with the hospital was the major inducement for plaintiff's entering the contract with defendant, plaintiff was not justified in terminating the contract with defendant. In *Harris v. Atlantic-Richfield Co.,* 469 F. Supp. 759 (E.D.N.C. 1978), defendant oil company entered into a fifteen-year requirements contract with plaintiff, a North Carolina distributor. Four years later, defendant ceased advertising and doing business in North Carolina. Plaintiff sued defendant for breach of contract, alleging that the major inducement for entering into the fifteen year contract was defendant's marketing and advertising program. The court, applying North Carolina law, held that defendant's withdrawal from doing business in North Carolina did not amount to a breach of contract with plaintiff. Similarly, here, defendant's cancellation with Charlotte Memorial Hospital did not amount to a breach of its separate contract with plaintiff.

The evidence showed that defendant did not have any contracts with hospitals or patient facilities other than Charlotte Memorial. Nevertheless, even a reasonable belief that defendant would not be able to carry out its part of the bargain did not justify plaintiff's entering into a contract with the hospital before determining whether his contract with defendant had been terminated. "[T]he law does not relieve a man from a contractual obligation because he believes with good cause the person with whom he has contracted will not be able to perform." *Coonan v. Cape Girardeau,* 149 Mo. App. 609, 620, 129 S.W. 745, 748 (1910). Plaintiff was still obligated to perform services for defendant, his employer, when he went to work for and signed the contract with Charlotte Memorial Hospital, thereby breaching his contract with defendant.

Since the trial court's factual findings are unsupported by the evidence, its legal conclusions, based on such findings, must be reversed. Plaintiff, having breached the contract, is not entitled to damages.

Even if the trial court's findings of fact had been supported by competent, credible evidence, its legal conclusions would, nevertheless, be in error. Had defendant breached the contract with plaintiff, plaintiff would only be entitled to recover damages sustained. Under plaintiff's contract with defendant, plaintiff earned an annual base salary of $75,000. Under plaintiff's contract with the hospital, plaintiff earned an annual base salary of $155,000. We fail to see how plaintiff was damaged.

[3] Although the termination clause in the parties' contract provided that defendant would pay plaintiff two months severance pay if defendant terminated the contract, defendant did not terminate plaintiff pursuant to such clause. A breach of contract would not trigger the severance pay provisions of the contract. Plaintiff, therefore, was not entitled to severance pay, in any event. In order to maintain an action for breach of contract, plaintiff must show that the alleged breach caused him injury. *Santana, Inc. v. Levi Strauss and Co.*, 674 F. 2d 269, 275 (4th Cir. 1982).

[4] Defendant also contends that the trial court erred when it dismissed its counterclaim for professional liability insurance premiums that had been prepaid by defendant. We find no error.

At the close of all the evidence, plaintiff made a motion for a directed verdict on the basis that there was no evidence of a requirement to prorate the benefits in dispute. Treating plaintiff's motion as one for involuntary dismissal, we find that the trial judge was correct in granting plaintiff's motion even though he made no findings of fact thereon. Ordinarily, it is incumbent upon the trial judge, whether on a motion to dismiss or at the close of all the evidence to specifically state his findings of fact. *O'Grady v. Bank*, 296 N.C. 212, 250 S.E. 2d 587 (1978); *Helms v. Rea, supra.* The purpose of the rule is to enable the reviewing court to determine whether the order represents a correct application of the law to the evidence, it being the function of the trial court to document the evidence underlying its order. *Coble v. Coble*, 300 N.C. 708, 268 S.E. 2d 185 (1980). In the case *sub judice*, the trial

---

---

judge made no findings of fact in regard to defendant's counterclaim, but neither did defendant present any evidence from which to make such findings. Defendant's sole evidence was its question to plaintiff on recross-examination:

> Q: Dr. Menzel, when your liability insurance coverage was purchased for you, it was purchased for a period from September 4, 1979, through September 4, 1980. That is correct, isn't it?

> A: I believe that it is usually purchased for a year.

Defendant presented no evidence that it sustained damages as a result of plaintiff's breach. It would be an empty ritual, when a party presents no evidence, to require the trial judge to state his findings of fact. *See Coble v. Coble, supra.* Defendant's counterclaim was properly dismissed.

As to plaintiff's claim, however, we reverse.

Reversed.

Judges WELLS and JOHNSON concur.