ANDREW H. AUSLEY, D/B/A AUSLEY APPRAISAL SERVICES, PLAINTIFF-APPELLEE v. BRYAN M. BISHOP, DEFENDANT-APPELLANT

No. COA98-922

(Filed 18 May 1999)

**1. Libel and Slander— statements adversely affecting business or personal reputation—summary judgment**

The trial court erred by granting summary judgment for plaintiff on defendant's counterclaim for slander where defendant was launching his own business as an appraiser and plaintiff's statements to defendant's clients and potential clients involving police reports of stolen client files and loan fraud undoubtedly had the capacity to harm defendant in his trade or profession.

**2. Unfair Trade Practices— slander per se—summary judgment**

The trial court erred by granting summary judgment for plaintiff on a counterclaim for unfair trade practices which alleged events both before and after the employment relationship between plaintiff and defendant ended. Any portion of the claim relating to events before the termination was properly dismissed, but the parties became competitors upon the termination of the employer-employee relationship and slander per se may constitute a violation of N.C.G.S. § 75-1.1.

**3. Damages— slander and unfair trade practice—after employment termination**

Damages were sufficiently pleaded in a counterclaim for unfair or deceptive trade practices based upon slander although other damages related to claims properly dismissed. On remand, the court should limit evidence of damages to those related to plaintiff's alleged slander and unfair and deceptive trade practices that took place after defendant left plaintiff's employment.

**4. Fraud— fraudulent misrepresentation—evidence of intent—summary judgment**

Summary judgment was properly granted for plaintiff on a counterclaim for fraudulent misrepresentation where there was no evidence of plaintiff's intent at the time the misrepresentations were made.

**5. Fraud— negligent misrepresentation—no evidence of failure to exercise reasonable care—summary judgment**

Summary judgment was properly granted for plaintiff on a counterclaim for negligent misrepresentation arising from plaintiff's actions in supervising defendant as an apprentice appraiser. There is no evidence to support defendant's contention that plaintiff failed to exercise reasonable care in communicating to defendant that he would sign defendant's log sheets or in communicating his intent regarding compensation.

**6. Contracts— breach—no evidence of damages—summary judgment**

Summary judgment was correctly granted on a breach of contract counterclaim where defendant was unable to establish or even estimate damages caused by the alleged breach. In order to prevail, defendant must show that the alleged breach caused him injury.

**7. Contracts— breach—at will employment**

Summary judgment was correctly granted for plaintiff on a counterclaim for breach of an employment contract where defendant did not meet his burden of establishing a specific duration of the contract. An employment contract without a specified duration but with the compensation specified at a rate per year, month, week or day is for an indefinite period.

**8. Contracts— employment compensation—breach—summary judgment**

Summary judgment was incorrectly granted for plaintiff on a counterclaim for breach of a written employment contract involving an apprentice appraiser by failing to pay commissions.

**9. Emotional Distress— intentional infliction—extreme and outrageous conduct—summary judgment**

Summary judgment was correctly granted for plaintiff on a counterclaim for intentional infliction of emotional distress arising from plaintiff's employment of defendant where plaintiff refused to follow through on his obligation to certify defendant's reports unless defendant entered into an agreement not to compete, contacted the police and caused embezzlement charges to be filed against defendant, and relayed negative and accusatory comments to defendant's creditors and potential clients.

Appeal by defendant from order entered 11 May 1998 by Judge Julius A. Rousseau, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 19 April 1999.

*Haywood, Denny & Miller, L.L.P., by John R. Kincaid and Thomas H. Moore, for plaintiff-appellee.*

*Randolph M. James, P.C., by Randolph M. James and David E. Shives, for defendant-appellant.*

EDMUNDS, Judge.

Plaintiff is a state-certified appraiser of real estate. Defendant, seeking to become a certified appraiser, was employed by plaintiff in November 1994 as an apprentice, a requisite step in defendant's training and certification process. Between November 1994 and April 1997, defendant prepared and signed appraisal reports, as required by the North Carolina Appraisal Board (the Board). For each report, defendant also prepared and retained a log sheet. The Board required that these log sheets be signed and stamped by a supervising appraiser to certify that each apprentice's report was completed under his or her general supervision.

In November 1994, plaintiff signed and stamped the first report and log sheet prepared by defendant. Plaintiff instructed defendant to let subsequent reports accumulate, however, and plaintiff would sign them simultaneously. In June 1996, defendant passed the State regis-

AUSLEY v. BISHOP

[133 N.C. App. 210 (1999).]

tered trainee examination. In April 1997, defendant was qualified to receive a license, subject only to plaintiff forwarding the supervising appraiser's certification. However, on 12 April 1997, at a meeting of the parties, plaintiff conditioned his certification of defendant's reports upon defendant's signing a newly-drafted employment contract, which included a provision relating to compensation and a non-compete clause. After examining the contract and having an attorney review it, defendant, claiming to have "no other choice," signed on 14 April 1997. Plaintiff then signed and stamped defendant's log sheets, and on 30 April 1997, the State issued defendant his official license.

On 1 June 1997, plaintiff opened a new branch office, which was to be run by defendant, and placed a new trainee there to work under defendant's supervision. It was only at this point that defendant began receiving the compensation guaranteed him pursuant to the April 14 contract. On 22 September 1997, plaintiff called for another meeting with defendant. During this meeting, after expressing concerns about misspellings and outdated data in some of defendant's reports, plaintiff proposed renegotiating their contract under terms that would result in decreased income to defendant. Defendant declined to agree to the new terms, and the employment relationship between the parties ended. On 24 September 1997, defendant began to operate his own appraisal business.

On 13 October 1997, plaintiff filed a complaint against defendant alleging breach of contract and unfair and deceptive trade practices. On 17 November 1997, defendant filed an answer and counterclaim, asserting nine claims against plaintiff: (1) breach of oral contract, (2) breach of written contract, (3) fraudulent misrepresentation, (4) negligent misrepresentation, (5) unfair and deceptive trade practices, (6) intentional infliction of emotional distress, (7) malicious prosecution, (8) libel, and (9) slander. On 5 December 1997, defendant filed a motion for partial summary judgment against plaintiff, which was granted on 11 February 1998. This summary judgment order has not been appealed. On 23 April 1998, plaintiff filed a motion for summary judgment as to defendant's counterclaim, which was granted on 11 May 1998. From the judgment dismissing his counterclaim, defendant appeals.

A trial court's grant of summary judgment is fully reviewable by this Court. *See Va. Electric and Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986). "The standard of review for whether summary judgment is

proper is whether the trial court properly concluded that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law." *Phelps v. Spivey*, 126 N.C. App. 693, 696, 486 S.E.2d 226, 228 (1997) (citation omitted). The record is to be viewed in the light most favorable to the non-movant, giving it the benefit of all inferences reasonably arising therefrom. *See Averitt v. Rozier*, 119 N.C. App. 216, 458 S.E.2d 26 (1995). After reviewing each claim in accordance with this standard, we conclude that the trial court correctly granted summary judgment as to most of defendant's claims; however, we also conclude that summary judgment was improper as to one claim and as to parts of two others, and reverse in part and remand for further proceedings.

## I. SLANDER

[1] Defendant contended at oral argument that his strongest claim was slander. We agree. Defendant alleged in his counterclaim that plaintiff committed slander by communicating to defendant's personal mortgage lender statements to the effect that defendant had committed loan fraud. This Court has held that "[a]mong statements which are slanderous *per se* are accusations of crimes or offenses involving moral turpitude, defamatory statements about a person with respect to his trade or profession, and imputation that a person has a loathesome [sic] disease." *Gibby v. Murphy*, 73 N.C. App. 128, 131, 325 S.E.2d 673, 675 (1985). When a statement falls into one of these categories, a *prima facie* presumption of malice and a conclusive presumption of legal injury and damage arise; allegation and proof of special damages are not required. *See Donovan v. Fiumara*, 114 N.C. App. 524, 528, 442 S.E.2d 572, 575 (1994).

Defendant avers that the statements allegedly made by plaintiff adversely affected defendant's business and personal reputation. Plaintiff admitted in his deposition that he made statements that impeached defendant in his trade. During a line of questions pertaining to a form signed by plaintiff and submitted by defendant to mortgage broker Southern Fidelity to finance defendant's own home, plaintiff was asked, "Did you suggest, infer, or imply to Robert [Phillips] at Southern Fidelity that your signature was procured by fraud or some other unlawful means on that appraisal report?" Plaintiff responded, "Correct." However, other questioning revealed that there was no evidence that the signature had been obtained improperly; instead, plaintiff admitted voluntarily signing the form without reading it. Further, plaintiff also admitted telling the same

Robert Phillips at Southern Fidelity that "Mr. Bishop had not been truthful about his income in qualifying for the loan that Southern Fidelity brokered, arranged or gave to the Bishops," when there was evidence that plaintiff previously had verified defendant's income to Southern Fidelity. Additionally, defendant stated in his affidavit that "[plaintiff] contacted several of my clients and potential clients and advised them, untruthfully, that I had engaged in various unethical conduct." Because defendant was launching his own business as an appraiser, plaintiff's incorrect statements to defendant's clients and potential clients undoubtedly had the capacity to harm defendant in his trade or profession.

In a second episode, plaintiff admitted reporting to police that defendant had stolen client files. The evidence to support plaintiff's report was that defendant was seen leaving his old office at plaintiff's business with a box, and that later a Rolodex was no longer on defendant's desk, and files containing defendant's resumes and sample appraisal files were also missing from a file cabinet. Although the investigation subsequently was dropped without any charges being brought, plaintiff admitted communicating to at least one person at Piedmont Home Equity that he suspected defendant had taken files, and had called the police. Again, this statement to a potential client of defendant was capable of harming him in his trade or profession. We therefore conclude that defendant has " 'forecast sufficient evidence of all essential elements of [his] claim[ ]' to make a *prima facie* case at trial" to survive plaintiff's motion for summary judgment. *Camalier v. Jeffries*, 340 N.C. 699, 711, 460 S.E.2d 133, 138 (1995) (quoting *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992)) (second alteration in original). We reverse as to this issue and remand for further proceedings.

## II. UNFAIR AND DECEPTIVE TRADE PRACTICES

[2] Defendant's next claim is that the trial court erred in granting plaintiff's summary judgment motion as to defendant's claim that plaintiff engaged in unfair and deceptive trade practices. Defendant's counterclaim alleged events happening both while defendant was working with plaintiff and after the employment relationship terminated. In granting plaintiff's motion for summary judgment, the trial judge found as a matter of law that defendant had not made out a claim. We disagree in part, concluding that defendant's claim as to plaintiff's activities after they separated should have been submitted to a jury.

This Court has held that "employer-employee relationships do not fall within the intended scope of [N.C. Gen. Stat. § 75-1.1] . . . [because] . . . [e]mployment practices fall within the purview of other statutes adopted for that express purpose." *Buie v. Daniel International*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119-20, *disc. review denied*, 305 N.C. 759, 292 S.E.2d 574 (1982). Therefore, any portion of defendant's claim for unfair and deceptive trade practices relating to events occurring before 23 September 1997 were properly dismissed.

However, upon termination of the employer-employee relationship, the parties became business competitors. N.C. Gen. Stat. § 75-1.1(a) (1994) declares: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Defendant alleged that he undertook the process of purchasing a house shortly before his employment with plaintiff ended. It appears from the record that he proceeded through mortgage broker Robert Phillips of Southern Fidelity Mortgage. After defendant left plaintiff's employ, plaintiff contacted Mr. Phillips to advise that defendant had submitted false information to obtain the mortgage. Although the transaction involved purchase of a house for defendant's own use, the North Carolina Supreme Court previously has held that the activities of a purchaser and a mortgage broker are activities in commerce. *See Johnson v. Insurance Co.*, 300 N.C. 247, 262, 266 S.E.2d 610, 620 (1980), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988), *reh'g denied*, 324 N.C. 117, 377 S.E.2d 235 (1989). Our Supreme Court has also determined that a letter sent in a business context and containing statements that were libelous *per se*, impeaching a party in its business activities, may come under the purview of section 75-1.1. *See Ellis v. Northern Star Co.*, 326 N.C. 219, 226, 388 S.E.2d 127, 130, *reh'g denied*, 326 N.C. 488, 392 S.E.2d 89 (1990). As noted above, defendant's relationship with Southern Fidelity Mortgage was both that of customer and of future business associate. We see no reason to distinguish libel *per se* from slander *per se* in this context, and hold that slander *per se* may constitute a violation of section 75-1.1. Defendant sufficiently forecast evidence that, if found to be true by a jury, would support a finding by a judge that plaintiff committed an unfair and deceptive trade practice.

[3] We next turn to the issue of damages. In order for defendant to recover under this statute, he must establish actual injury to himself

or his business, proximately caused by the unfair or deceptive act or practice. *See Spartan Leasing v. Pollard*, 101 N.C. App. 450, 400 S.E.2d 476 (1991). The jury determines in what amount, if any, the complaining party is injured and whether the occurrence was the proximate cause of those injuries. *See Barbee v. Atlantic Marine Sales & Service*, 115 N.C. App. 641, 647, 446 S.E.2d 117, 121, *disc. review denied*, 337 N.C. 689, 448 S.E.2d 516 (1994) (citation omitted). If the judge determines that the facts found by the jury establish unfair and deceptive business practices, the damages are trebled. *See* N.C. Gen. Stat. § 75-16 (1994). In his counterclaim, defendant alleged multiple damages; however, many of these are related to claims that were properly dismissed, as we hold below. Viewing the evidence in the light most favorable to defendant, the nonmoving party, the damages alleged by defendant to have been proximately caused by plaintiff's alleged unfair or deceptive acts are (1) loss of time from work to obtain documentation needed to respond to the mortgage company's questions, which arose from plaintiff's allegations of fraud; and (2) emotional distress, which resulted in a hospital visit. These damages were sufficiently pleaded. The trial judge erred in granting summary judgment as to defendant's claim of unfair and deceptive trade practices arising after the business separation of plaintiff and defendant. Because it appears from the record that all the alleged slander also took place after the business separation, on remand the trial court should limit evidence of damages to those related to plaintiff's alleged slander and unfair and deceptive trade practices that took place after defendant left plaintiff's employment.

### III. FRAUDULENT MISREPRESENTATION

[4] Defendant claims that plaintiff's acts in (a) representing to defendant that he intended to sign and stamp all of defendant's log sheets at some future date, when in fact he had no such intention, and (b) inducing defendant to sign the 14 April 1997 agreement when plaintiff never intended to compensate defendant according to its terms, constitute fraudulent misrepresentation. For actionable fraud to exist, plaintiff "must have known the representation to be false when making it, or . . . must have made the representation recklessly without any knowledge of its truth and as a positive assertion." *Fulton v. Vickery*, 73 N.C. App. 382, 388, 326 S.E.2d 354, 358, *disc. review denied*, 313 N.C. 599, 332 S.E.2d 178 (1985). In this case, there is no evidence that plaintiff "knew [the statement] was false or made it without any knowledge of its truth and as a positive assertion." *Myers & Chapman*, 323 N.C. at 568, 374 S.E.2d at 391 (citation omit-

ted) (emphasis omitted). Although defendant cites *Johnson* for the proposition that a promissory misrepresentation may constitute fraud when it is made with the intent to deceive and when the promisor had no intent of complying at the time of making the misrepresentation, there is no evidence of plaintiff's intent at the time the misrepresentations were made. Without such evidence, this argument must fail; summary judgment on this issue was proper.

## IV. NEGLIGENT MISREPRESENTATION

[5] Defendant contends that the trial court erred in dismissing his claim for negligent misrepresentation. Although negligence cases "are ordinarily not susceptible of summary adjudication because application of the prudent man test, or any other applicable standard of care, is generally for the jury," *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 596, 394 S.E.2d 643, 648 (1990) (citation omitted), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 824 (1991), we agree with the trial court that defendant's allegations failed as a matter of law to establish any genuine issue of material fact, *see Phelps*, 126 N.C. App. 693, 486 S.E.2d 226. Fraudulent misrepresentation focuses on plaintiff's knowing action, while negligent misrepresentation turns on plaintiff's lack of reasonable care. "The tort of negligent misrepresentation occurs when in the course of a business or other transaction in which an individual has a pecuniary interest, he or she supplies false information for the guidance of others in a business transaction, without exercising reasonable care in obtaining or communicating the information." *Fulton*, 73 N.C. App. at 388, 326 S.E.2d at 358 (citation omitted). However, a party cannot "be liable for concealing a fact of which it was unaware." *Ramsey v. Keever's Used Cars*, 92 N.C. App. 187, 190, 374 S.E.2d 135, 137 (1988).

The events cited by defendant to support his allegations of negligent misrepresentation are the same as those cited to support his claims for fraudulent misrepresentation. However, while defendant claims he relied on information supplied by plaintiff to the effect that plaintiff would sign his log sheets, there is no evidence in the record to support his contention that plaintiff failed to exercise reasonable care in communicating that information to defendant. Three years passed between the time plaintiff told defendant to maintain the log sheets to be signed at a later date, and the time when plaintiff conditioned his certification on the effectuation of the non-compete agreement. Even taking this evidence in the light most favorable to defendant, there are no grounds even to infer that plaintiff acted negligently.

Defendant's second claim of negligent misrepresentation relates to plaintiff's intent to abide by the terms of the 14 April 1997 agreement. However, the record is devoid of any evidence that plaintiff failed to exercise due care when communicating his intentions regarding compensation under this agreement. This claim was properly dismissed.

## V. BREACH OF ORAL CONTRACT

[6] Defendant next argues that the trial court erred in dismissing his claim for breach of contract. He contends that the parties entered into an oral contract that required defendant to utilize his contacts in the community to build plaintiff's business, and in return, plaintiff would supervise defendant during his apprenticeship and certify defendant's work. Defendant argues that plaintiff breached this contract by failing to certify defendant's work in November 1994 and thereafter and by anticipatory breach in April 1997 "when [plaintiff] refused to certify the log sheets unless Bishop entered a new written contract containing additional promises . . . ."

In order to prevail on this claim, defendant "must show that the alleged breach caused him injury." *Menzel v. Metrolina Anesthesia Assoc.*, 66 N.C. App. 53, 59, 310 S.E.2d 400, 404 (1984) (citation omitted). Despite extensive questioning during his deposition, defendant was unable to establish, or even estimate, damages caused by the alleged breach. The record indicates that plaintiff did supervise defendant and eventually sign all of defendant's log sheets, albeit under questionable conditions. In the absence of evidence of any damage caused by plaintiff's actions, the trial court properly granted plaintiff's motion for summary judgment as to this issue. This assignment of error is overruled.

## VI. BREACH OF WRITTEN CONTRACT

[7] Defendant next contends that the parties had an enforceable written contract and that because the 14 April 1997 agreement set out an "annual salary," he was necessarily employed for a term of years. However, we note that the agreement states on its face that: "Employee's employment shall be at will, terminable at any time by either party." As our courts have long held, "[a]n employment contract . . . where the compensation is specified at a rate per year, month, week or day, but where the duration of the contract is not specified, is for an indefinite period." *Freeman v. Hardee's Food Systems*, 3 N.C. App. 435, 437-38, 165 S.E.2d 39, 41 (1969); *see also Wilkerson v. Carriage Park Dev. Corp.*, 130 N.C. App. 475, 503 S.E.2d

138, *disc. review denied,* 349 N.C. 534, —— S.E.2d —— (1998). The specific language that the agreement is "at will" easily overrides any implication to the contrary suggested by the annual pay rate. Defendant has not met his burden of establishing a specific duration of the employment contract. *See Rosby v. General Baptist State Convention,* 91 N.C. App. 77, 80, 370 S.E.2d 605, 608 (citing *Freeman,* 3 N.C. App. 435, 165 S.E.2d 39), *disc. review denied,* 323 N.C. 626, 374 S.E.2d 590 (1988).

[8] Defendant further claims that plaintiff breached the written contract by failing to pay commissions due him under the contract during the period from April to July 1997. Although plaintiff responds that this issue was not raised in the court below and cannot be raised for the first time on appeal, we observe that defendant alleged breach of written contract in his counterclaim and stated in his deposition that plaintiff failed to pay in accordance with the agreement for those months. We conclude that this is an adequate forecast of evidence to allow this issue to go forward. This assignment of error is overruled as to defendant's contention that the contract was for a term of years, but is remanded for further proceedings as to defendant's claim that plaintiff breached his duty to pay defendant in accordance with the written agreement.

## VII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

[9] Defendant next argues that the trial court erred in summarily dismissing his claim for intentional infliction of emotional distress. To establish such a claim, defendant must show that plaintiff engaged in extreme and outrageous conduct that was intended to cause severe emotional distress or was recklessly indifferent to the likelihood that such distress would result, *and* that severe distress did result from plaintiff's conduct. *See Dickens v. Puryear,* 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). Plaintiff must have done more than merely insult or threaten defendant in order to incur liability. *See Wagoner v. Elkin City Schools' Bd. of Education,* 113 N.C. App. 579, 586, 440 S.E.2d 119, 123, *disc. review denied,* 336 N.C. 615, 447 S.E.2d 414 (1994). Instead, defendant must specify incidents of conduct that " 'exceed all bounds usually tolerated by decent society.' " *Stanback v. Stanback,* 297 N.C. 181, 196, 254 S.E.2d 611, 622 (1979) (citation omitted). Our review of prior cases reveals that the claimant's burden of proof is a high one. In *Hogan v. Forsyth Country Club Co.,* 79 N.C. App. 483, 340 S.E.2d 116, *disc. review denied,* 317 N.C. 334, 346 S.E.2d 140 (1986), this Court found no intentional infliction of emotional distress where the defendant screamed and shouted at one

plaintiff, interfered with those under the plaintiff's supervision, and threw menus at the plaintiff. This same defendant also required another plaintiff, who was pregnant, to lift and carry items weighing more than ten pounds, and refused to allow her to leave work to go to the hospital. In the case at bar, defendant claims that plaintiff (1) refused to follow through on his obligation to certify defendant's reports unless defendant entered into an agreement not to compete, (2) contacted the police and caused embezzlement charges to be filed against defendant, and (3) relayed negative and accusatory comments to defendant's creditors and potential clients. Deplorable as this alleged behavior may be, in light of our former decisions, we cannot say that the trial court erred as a matter of law in granting plaintiff's motion for summary judgment. This assignment of error is overruled.

Accordingly, the trial court's grant of summary judgment is reversed as to defendant's claims of slander, reversed in part as to defendant's claims of unfair and deceptive trade practices and breach of written contract, and remanded for further proceedings as directed above. Summary judgment is affirmed as to all other claims.

Affirmed in part, reversed in part, and remanded for further proceedings.

Chief Judge EAGLES and Judge JOHN concur.