NUCOR CORPORATION, PLAINTIFF v. PRUDENTIAL EQUITY GROUP, LLC, JOHN C. TUMAZOS, AND PARETOSH MISRA, DEFENDANTS

No. COA07-1007

(Filed 15 April 2008)

**1. Libel and Slander— financial report—not libel per se**

The trial court correctly granted defendants' motion to dismiss a libel per se action arising from a financial report where the portions of the document objected to did not assert illegal or wrongful activity or consisted of opinion or rhetorical language, and the overall import of the document was not derogatory to plaintiff. A claim of libel per se refers solely to the face of the document and explanatory circumstances are not considered.

**2. Unfair Trade Practices— financial report—not libel per se—no misappropriation of information—actual injury not alleged**

A claim for unfair and deceptive trade practices arising from a financial report was properly dismissed where the claim was based on a libel per se claim, held to have been properly dismissed, and the misappropriation of confidential information. Plaintiff did not allege that the actions of defendant Misra, who had access to the information, constituted unfair or deceptive

trade practices or that those actions were the proximate cause of actual injury. At most, plaintiff alleged breach of a confidentiality agreement, but did not allege actual injury or substantial aggravating circumstances.

Appeal by plaintiff from final judgment and amended order entered 25 April 2007 by Judge James W. Morgan in Superior Court, Mecklenburg County. Heard in the Court of Appeals 7 February 2008.

*Moore & Van Allen PLLC by Colin R. Stockton, Gregory J. Murphy, and Paul J. Peralta, for plaintiff-appellant.*

*Kennedy Covington Lobdell & Hickman, LLP by Raymond E. Owens, Jr., for defendants-appellee.*

STROUD, Judge.

Plaintiff filed a complaint alleging claims of libel *per se* and unfair and deceptive trade practices against defendants. Defendants filed a motion to dismiss both causes of action. The trial court allowed defendants' motion to dismiss, and plaintiff appeals. The dispositive question before this Court is whether the trial court erred in allowing defendants' motion to dismiss. For the following reasons, we affirm.

## I. Background

On 22 January 2007, plaintiff filed a complaint against defendants Prudential Equity Group, LLC ("Prudential"), John C. Tumazos ("Tumazos"), and Paretosh Misra ("Misra") alleging the following pertinent facts:

9. Nucor is a steel manufacturer based in Charlotte, North Carolina with facilities located throughout the United States. It is a publicly traded company on the New York Stock Exchange.

10. As a publicly traded company, Nucor's business operations and stock performance is, from time to time, the subject of analysts' reviews.

11. [Prudential] has had in its employ, at all relevant times, . . . Tumazos, an analyst who reviews the metals market. Tumazos is a Chartered Financial Analyst ("CFA") who is bound by the CFA Institute Code of Ethics and Standards of Professional Conduct.

12. The CFA Code of Ethics and Standards of Professional Conduct require that its analysts have a reasonable and adequate

NUCOR CORP. v. PRUDENTIAL EQUITY GRP., LLC

[189 N.C. App. 731 (2008)]

basis supported by research and investigation for any investment analysis.

13. Nucor is among the companies within Tumazos' self-proclaimed "Analyst Universe Coverage".

14. Former Nucor employee, . . . Misra, assisted Tumazos in his coverage of Nucor at all relevant times.

15. Misra is a metallurgist by training. Prior to working for [Prudential], Misra was employed at Nucor's Berkeley facility in Berkeley, South Carolina . . . from December 16, 2002 through approximately December 19, 2005.

. . . .

18. Misra was subject to a confidentiality agreement with Nucor which he signed on February 13, 2004.

. . . .

20. Before communicating his resignation to Nucor, Misra downloaded onto two USB flash drives confidential Nucor data[.]

. . . .

22. Misra removed and kept the documents, materials and data . . . without Nucor's authorization or knowledge.

. . . .

29. Tumazos . . . prepared a "Company Update" dated December 12, 2006. The Company Update, on page 1, contained the following statement under the "Highlights" section:

Alienated customers may encourage Nippon Steel, Brazil's CSN or some of Nucor's sixteen plant managers to build new steel companies in addition to Thyssen, Severcorr, or reborn Weirton Steel adding ten million tons. Alienated customers may file antitrust lawsuits as has been done in the electrode, container board OSB, or other sectors. A clever attorney could make hay from trebled damages on Nucor's $2.6 billion pre-tax earnings. . . .

30. The reference to antitrust lawsuits "in the electrode sector[]" concerned lawsuits filed by steel manufacturers alleging price-fixing by electrode suppliers.

31. The reference to antitrust lawsuits in the OSB sector concerned class-action lawsuits filed by consumers alleging price-fixing by OSB producers and suppliers.

32. On page 7 of the Company Update, [Prudential] further states:

Nucor needs to wake up from its monopoly dreams and get back to reality in our view.

33. [Prudential] published this Company Update via electronic mail to investors nationwide and to Nucor on or about December 12, 2006 under the banner head "First Call Research Network".

. . . .

35. Following publication of the December 12, 2006 Company Update Nucor customers contacted Nucor after having received copies of the [Prudential] statement. Similarly, a metals analyst contacted Nucor to inquire whether there was any truth to the [Prudential] statements regarding Nucor and antitrust activities.

36. On December 18, 2006, Platts Metals Week Market Supplement re-published excerpts of the [Prudential]/Tumazos article where Tumazos was quoted as stating "Nucor needs to wake up from its monopoly dreams and get back to reality in our view." . . . .

37. On December 15, 2006, through counsel, Nucor demanded that [Prudential] retract the defamatory statements contained in the [Prudential] Company Update. [Prudential] failed to issue the retraction. Instead, on December 27, 2006, [Prudential] issued a Company Update stating, under the "Highlights" Section:

The December 12, 2006 Company Update on Nucor Corporation was not intended to, did not, and should not be read to suggest or imply any unlawful conduct on the part of Nucor. . . . .

39. The December 27, 2006 statement by [Prudential] did not withdraw or retract its earlier December 12, 2006 statement claiming Nucor had engaged in anti-trust activities.

Plaintiff's complaint asserted causes of action for libel *per se* and unfair or deceptive trade practices.

On 22 February 2007, defendants filed a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) because

1. [p]laintiff's libel per se claim is barred because the words complained of are non-verifiable and opinion and therefore not subject to a defamation action under North Carolina law and the First Amendment;

2. [p]laintiff's libel per se claim is barred because the words complained of are subject to more than one interpretation and not of such character that the court can presume as a matter of law that they are defamatory; and

3. [p]laintiff's claim for alleged unfair business practices under N.C. Gen. Stat. § 75-1.1 is based solely on the publication of allegedly defamatory statements, and must be dismissed when the underlying libel claim is dismissed.

On 25 April 2007, the trial court entered a "Final Judgment and Amended Order" allowing defendants' motion to dismiss and dismissing plaintiff's complaint with prejudice. Plaintiff appeals. The issue before this Court is whether the trial court erred in granting defendants' motion to dismiss both plaintiff's libel *per se* and unfair or deceptive trade practices claims.

## II. Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the standard of review is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief.

*Block v. County of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419 (2000) (internal citations and internal quotation marks omitted).

## III. Libel *Per Se*

[1] Plaintiff first assigns error and claims that the superior court erred in dismissing its libel *per se* claim as "defendants published false and misleading statements which impeached [plaintiff's] business reputation." For the following reasons, we disagree.

"To be actionable, a defamatory statement must be false and must be communicated to a person or persons other than the person

defamed." *Andrews v. Elliot*, 109 N.C. App. 271, 274, 426 S.E.2d 430, 432 (1993).

> In North Carolina, the term defamation applies to the two distinct torts of libel and slander. Libel *per se* is a publication which, *when considered alone without explanatory circumstances*: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace.

*Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 898 (2002) (citation and internal quotation marks omitted) (emphasis added), *cert. denied*, 540 U.S. 965, 157 L. Ed 2d 310 (2003).

> [D]efamatory words to be libelous *per se* must be susceptible of *but one meaning* and of such nature that *the court* can presume *as a matter of law* that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided.

*Renwick v. News and Observer and Renwick*, 310 N.C. 312, 317-18, 312 S.E.2d 405, 409 (citation and quotation marks omitted) (emphasis in original), *rehearing denied*, 310 N.C. 749, 315 S.E.2d 704, *cert. denied*, 469 U.S. 858, 83 L. Ed. 2d 121 (1984). "Although someone cannot preface an otherwise defamatory statement with 'in my opinion' and claim immunity from liability, a pure expression of opinion is protected because it fails to assert actual fact." *Daniels v. Metro Magazine Holding Co., L.L.C.*, 179 N.C. App. 533, 539, 634 S.E.2d 586, 590 (2006). This Court considers how the alleged defamatory publication would have been understood by an average reader. *See Boyce & Isley, PLLC* at 31, 568 S.E.2d at 899. In addition, the alleged defamatory statements must be construed only in the context of the document in which they are contained, "stripped of all insinuations, innuendo, colloquium and explanatory circumstances. The articles must be defamatory on its face within the four corners thereof." *See Renwick* at 317-18, 312 S.E.2d at 409 (citation and internal quotation marks omitted).

Considering the publication at issue "alone without explanatory circumstances" we agree with the determination of the trial court. *See Boyce & Isley, PLLC* at 29, 568 S.E.2d at 898. The alleged defamatory statements are:

Alienated customers may encourage Nippon Steel, Brazil's CSN or some of Nucor's sixteen plant managers to build new steel companies in addition to Thyssen, Severcorr, or reborn Weirton Steel adding ten million tons. Alienated customers may file antitrust lawsuits as has been done in the electrode, container board OSB, or other sectors. A clever attorney could make hay from trebled damages on Nucor's $2.6 billion pre-tax earnings[, and]

Nucor needs to wake up from its monopoly dreams and get back to reality in our view.

Plaintiff contends its case is analogous to *Ellis v. Northern Star Co.* and *Ausley v. Bishop* where valid claims for defamation were found. *See Ellis v. Northern Star Co.*, 326 N.C. 219, 221, 388 S.E.2d 127, 128, *rehearing denied*, 326 N.C. 488, 392 S.E.2d 89 (1990); *Ausley v. Bishop*, 133 N.C. App. 210, 214-15, 515 S.E.2d 72, 76 (1999). However, in both *Ellis* and *Ausley* specific wrongful acts were alleged in the publication; here, no specific acts on the part of plaintiff have been alleged. *See Ellis* at 222, 388 S.E.2d at 129; *Ausley* at 214, 515 S.E.2d at 76. The publication here in no way asserts any illegal or wrongful activity on the part of plaintiff, distinguishing it from the *Ellis* and *Ausley* cases. *See id.*

The statement in regard to "alienated customers" states the customers "*may* file antitrust lawsuits." Certainly it is true that alienated customers "may" file antitrust lawsuits, as presumably anyone can "file" any lawsuit, although the merits of those lawsuits are a different issue. The "alienated customers" statement also referenced lawsuits filed in the "electrode, container board OSB, or other sectors" as an example. Plaintiff then goes on in paragraphs 30 and 31 of its complaint, noted *supra*, to explain these references. However, for a claim of libel *per se* this Court is not to consider "explanatory circumstances[,]" but rather solely considers the document on its face. *See Boyce & Isley, PLLC* at 29, 568 S.E.2d at 898. "Words which are libelous *per se* do not need an innuendo, and, conversely, words which need an innuendo are not libelous *per se*." *Flake v. News Co.*, 212 N.C. 780, 787, 195 S.E. 55, 60 (1938). Lastly, as to "alienated customers" the publication notes that "[a] clever attorney could make hay from trebled damages on Nucor's $2.6 billion pre-tax earnings." We do not find any part of this statement, which does not allege specific wrongful conduct on the part of the plaintiff and uses such rhetorical language as "could make hay[,]" to be defamatory. *See*

*Daniels* at 539, 634 S.E.2d at 590; *Boyce & Isley, PLLC* at 29, 568 S.E.2d at 898. The second statement, "Nucor needs to wake up from its monopoly dreams and get back to reality in our view[,]" is also an opinion statement without any alleged facts on which we could find grounds for a claim of libel *per se. See id.*

We must also consider the publication as a whole, looking at the allegedly defamatory statements, within the "four corners" of the document. *See Renwick* at 318, 312 S.E.2d at 409. The overall import of the document is not derogatory of plaintiff. The publication also states that "We believe Nucor is a fine company, and we are not aware of any 'company-specific' flaw or blemish." The publication also states under the bold and enlarged font heading, "REGULATION AC DISCLOSURE[,]" that "Tumazos CFA is principally responsible for the analysis of any security or issuer included in this report and certifies that the views expressed accurately reflect such research analyst's personal views[.]" We conclude that neither the individual statements separately considered nor the publication considered as a whole are grounds for a valid claim of libel *per se,* and therefore we affirm the dismissal of this claim. This assignment of error is overruled.

### IV. Unfair or Deceptive Trade Practices

**[2]** Plaintiff also assigns error and argues that the trial court erred in dismissing its unfair or deceptive trade practices claim because (1) "libel *per se* in a business context constitutes a violation of the trade practices statute" and (2) "defendant Misra's misappropriation of confidential information, done in violation of his confidentiality agreements with [plaintiff], constitutes a violation of the trade practices statute[.]"

> A claim of unfair and deceptive trade practices under section 75-1.1 of the North Carolina General Statutes requires proof of three elements: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant. A libel *per se* of a type impeaching a party in its business activities is an unfair or deceptive act in or affecting commerce in violation of N.C. Gen. Stat. § 75-1.1, which will justify an award of damages for injuries proximately caused. To recover, a plaintiff must have suffered actual injury as a proximate result of the deceptive statement or misrepresentation.

*Craven v. SEIU COPE,* 188 N.C. App. ——, ——, 656 S.E.2d 729, 733-34 (2008) (internal citations, quotations marks, ellipses, and brackets omitted).

**NUCOR CORP. v. PRUDENTIAL EQUITY GRP., LLC**

[189 N.C. App. 731 (2008)]

As we have already determined that plaintiff's claim for libel *per se* was properly dismissed, plaintiff's unfair and deceptive trade practices claim cannot be based upon the libel *per se*. Plaintiff also argues that "Misra's misappropriation of confidential information, done in violation of his confidentiality agreements with [plaintiff]" constitutes "other tortious conduct" upon which its unfair and deceptive trade practices claim stands as valid. *See Craven* at ——, 656 S.E.2d at 734.

There are at least two flaws in plaintiff's argument that "Misra's misappropriation of confidential information, done in violation of his confidentiality agreements" can be the basis for an unfair and deceptive trade practices claim. First, plaintiff did not allege in its complaint that the actions of Misra constituted unfair or deceptive trade practices or that Misra's actions were the proximate cause of any actual injury to plaintiff, as is necessary for a valid claim of unfair or deceptive trade practices. *See Craven* at ——, 656 S.E.2d at 733. Next, even if we construe the complaint as liberally as possible and incorporate all of the prior allegations into the unfair or deceptive trade practices claim, at most, plaintiff has alleged that Misra breached his confidentiality agreement with plaintiff.[1] "However, it is well recognized that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 367-68, 533 S.E.2d 827, 832-33 (citation, internal quotation marks, and ellipses omitted), *disc. rev. denied*, 353 N.C. 262, 546 S.E.2d 93 (2000). A "plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act[.]" *Id.* at 368, 533 S.E.2d at 833 (citation and internal quotation marks omitted). Even assuming that plaintiff has alleged a breach of contract, plaintiff has failed to allege either actual injury or "substantial aggravating circumstances" related to any breach of the confidentiality agreement. *Craven* at ——, 656 S.E.2d at 733; *Eastover Ridge, L.L.C.* at 367-68, 533 S.E.2d at 833. These assignments of error are overruled.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order allowing defendants' motion to dismiss plaintiff's claims.

---

1. However, we note that plaintiff has not argued that its complaint states a claim for breach of contract against Misra.

AFFIRMED.

Judges TYSON and GEER concur.