Vollrath v. Corinthian Ophthalmic, Inc., 2014 NCBC 59.

STATE OF NORTH CAROLINA

UNION COUNTY

JURGEN VOLLRATH,

          Plaintiff,

v.

CORINTHIAN OPHTHALMIC, INC.,
and FRED ESHELMAN,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 1676

**ORDER AND OPINION**

{1} **THIS MATTER** is before the Court upon Defendants Corinthian Ophthalmic, Inc. ("Corinthian" or the "Company") and Fred Eshelman's ("Eshelman") (collectively, "Defendants") Motion to Dismiss or, in the Alternative, for Summary Judgment (the "Motion") in the above-captioned case. After considering the Motion, the briefs in support of and in opposition to the Motion, and the arguments at a hearing held on October 8, 2014, the Court **GRANTS** Defendants' Motion, enters judgment for Defendants, and **DISMISSES** this action **with prejudice**.

*Jürgen Vollrath, pro se.*

*Brooks, Pierce, McLendon, Humphrey & Leonard LLP by James T. Williams and Benjamin R. Norman for Defendants Corinthian Ophthalmic, Inc. and Fred Eshelman.*

Bledsoe, Judge.

I.

INTRODUCTION

{2} Plaintiff filed the Complaint in this action on June 27, 2014. Plaintiff does not specifically identify his claims for relief in the Complaint but appears to assert claims against Corinthian for common law fraud and for unfair and deceptive trade

practices under N.C.G.S. § 75-1.1 ("UDTPA"),[1] and further, to pierce the corporate veil to hold Eshelman personally liable on the claims against Corinthian.[2]

{3}     Defendants filed this Motion seeking dismissal of each of Plaintiff's claims for failure to state a claim under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure or, in the alternative, for summary judgment under Rule 56.  Both parties have presented evidence outside the pleadings for the Court's consideration.  The Court has elected to consider that evidence and therefore determines Defendants' Motion solely as a Rule 56 motion for summary judgment.  *See, e.g., Stanback v. Stanback*, 297 N.C. 181, 205, 254 S.E.2d 611, 627 (1979) ("A Rule 12(b)(6) motion to dismiss for failure to state a claim is . . . converted to a Rule 56 motion for summary judgment when  matters outside the pleadings are presented to and not excluded by the court.").

II.

FACTUAL BACKGROUND

{4}     "Although findings of fact are not necessary on a motion for summary judgment, it is helpful to the parties and the courts for the trial judge to articulate a summary of the material facts which he considers are not at issue and which justify entry of judgment." *Collier v. Collier*, 204 N.C. App. 160, 161–62, 693 S.E.2d 250, 252 (2010).  Therefore, the Court recites the material and undisputed facts to decide the Motion and not to resolve issues of material fact.

---

[1] Plaintiff states in his opposition brief that his "request for treble damages is not based on [N.C.G.S.] § 75-1.1 but simple punitive damages that may be awarded by the trier of fact in fraud cases."  (Pl.'s Resp. Defs.' Mot., p. 19.)  Nevertheless, because Plaintiff has sought treble damages in his Complaint and has alleged at his deposition that Defendants have committed unfair and deceptive trade practices (Dep. Vollrath 107:21–108:5), the Court will address these contentions as an attempt to assert a UDTPA claim.

[2] Although it is unclear from the Complaint whether Plaintiff intends to assert "piercing the corporate veil" as a separate claim for relief in this action, to the extent he seeks to do so, the Court dismisses the claim with prejudice as a matter of law.  *See Green v. Freeman*, 367 N.C. 136, 146, 749 S.E.2d 262, 271 (2013) ("The doctrine of piercing the corporate veil is not a theory of liability.  Rather, it provides an avenue to pursue legal claims against corporate officers or directors who would otherwise be shielded by the corporate form."); *Green v. Freeman*, 756 S.E.2d 368, 372 (N.C. Ct. App. 2014) ("[P]iercing the corporate veil . . . is not itself a cause of action.").

{5}    Corinthian was formed in 2010 for the purpose of creating, developing, and commercializing methods for delivery of topical ophthalmic drugs. (Aff. Fred Hutchinson ¶ 3, Aug. 29, 2014.)

{6}    Plaintiff is an attorney who co-founded Corinthian and served as Corinthian's CEO, Director, and Treasurer from its inception until November 2011. (Defs.' Br. Supp. Mot., p. 2–3.) After Plaintiff's resignation as CEO in November 2011, Plaintiff remained employed by Corinthian as the Director of Regulatory Affairs until his resignation from the Company in April 2014. (Dep. Jürgen Vollrath, p. 65, July 30, 2014.)

{7}    In January, 2011, Plaintiff was granted non-qualified stock options under the Company's 2010 Stock Option Plan to purchase 9,000 shares of Company stock at an exercise price of $30 per share within 10 years of the date of grant. (Dep. Vollrath, Exs. 3–4.) The terms of the option grant were memorialized in a Stock Option Award Agreement between Plaintiff and the Company. Under the terms of an Addendum to the Stock Option Award Agreement, Plaintiff and the Company agreed that Plaintiff's right to exercise these options would expire no later than 180 days after termination of his employment at the Company. (Pl.'s Resp. Defs.' Mot., Ex. 10).

{8}    On November 9, 2011, and in exchange for a payment of $7,500, Plaintiff entered into a non-compete agreement with Corinthian (the "Non-compete Agreement") under which he was entitled to receive a severance benefit "equal to eighteen months of [Plaintiff's] base salary . . ." in the event he was terminated without cause (Pl.'s Resp. Defs.' Mot., Ex. 1). Paragraph 11.1 of the Non-compete Agreement expressly provided that Plaintiff would "not be entitled to any severance benefits under [the Non-compete Agreement] should he be terminated without cause at any time following a change in control or effective ownership of the Company."

{9}    Defendant Eshelman became CEO and Chairman of the Board of Directors of Corinthian on February 8, 2013. On April 5, 2013, and in response to the Company's declining revenues, Eshelman reduced Plaintiff's salary from $15,000.00 per month to $1,000.00 per month. (Dep. Vollrath 77:14–18, Ex. 6–7, 9.) Thereafter

and until his termination, Plaintiff received a monthly salary of between $1,000.00 and $2,000.00. (*Id.* at 80:2–22; Defs.' Br. Supp. Mot., p. 3.)

{10} In late 2013, as the Company suffered a continuing decline in revenues, Plaintiff and Corinthian began negotiating the terms of Plaintiff's resignation from Corinthian. Plaintiff was represented by counsel in these negotiations (Aff. Breton Bocchieri ¶ 2, Sept. 22, 2014). Plaintiff and Corinthian ultimately reached an agreement in April 2014 whereby Plaintiff agreed to resign his employment and waive his right to severance under the Non-compete Agreement, (*See* Pl.'s Resp. Defs.'s Mot., Ex. 3), in exchange for Corinthian's agreement to cancel Plaintiff's existing stock options at the $30 exercise price and to award Plaintiff new stock options to purchase 9,000 shares of Corinthian stock at a much lower exercise price of $12.83 per share. It is undisputed that the Company advised Plaintiff that the $12.83 per share exercise price was based on a "recently received term sheet" the Company had received from a potential purchaser of all of the Company's stock or assets. (Pl.'s Br. Supp. Defs.' Mot., Ex. 8, the "Notice of Nonstatutory Stock Option"; Defs.' Br. Supp. Mot., p. 4; Defs.' Br. Supp. Mot., Ex. 19-1, the "Memorialization Letter".)

{11} On April 8, 2014, Plaintiff executed a Nonstatutory Stock Option Agreement to evidence the Company's stock option grant at the $12.83 exercise price (the "Stock Option Agreement"). The Notice of Nonstatutory Stock Option Agreement (the "Notice") attached to and incorporated in the Agreement stated that the options would expire on April 8, 2021 but specifically provided that the options "may expire earlier pursuant to Section 8(b) of the . . . Stock Option Agreement." (Defs.' Br. Supp. Mot., Ex. 19-2.)

{12} Section 8(b)(2) of the Stock Option Agreement, titled "Consequences of a Change in Control," expressly stated that "[i]n connection with a Change in Control, the Board may in its discretion take any one or more of [six] actions as to [Plaintiff's stock options] on such terms as are reasonable and as the Board determines," including to "provide that [Plaintiff's stock options] shall become exercisable, realizable or deliverable in whole or in part prior to or upon such Change in Control."

{13}  The Stock Option Agreement also included a Merger Clause that provided that the Stock Option Agreement "supersede[d] in their entirety all prior oral or written undertakings and agreements of the Company and [Plaintiff] with respect to [Plaintiff's stock options]."

{14}  Consistent with the terms of the negotiated agreement, Corinthian paid Plaintiff the total amount of $6,233.33, and Plaintiff thereafter resigned from his employment at Corinthian in April 2014.

{15}  Several weeks later, on May 27, 2014, Corinthian announced that a competitor, Eyenovia, Inc., had agreed to purchase Corinthian's assets and that, pursuant to the Board's authority under Section 8(b) of the Stock Option Award, holders of Corinthian stock options, including Plaintiff, would be required to exercise their options prior to the closing of the sale to Eyenovia in order to receive stock in the new company.  (*See* Compl. ¶ 23; Aff. Hutchison ¶¶ 11–12.)

{16}  On October 21, 2014, Defendants notified the Court via email that Corinthian had "closed on the sale of assets to . . . Eyenovia" (the "Sale").  (Email from Benjamin R. Norman, attorney for Defendants, to Dorothy M. Gooding, law clerk to the undersigned (October 21, 2014, 5:30 PM) (on file with the Court).)  Despite undisputed evidence that Plaintiff's options potentially had an in-the-money value of up to $50,000, Plaintiff did not exercise his option to purchase 9,000 shares of Corinthian stock before the closing on the Sale.[3]  (Aff. Hutchison ¶ 13.)

{17}  As noted, this case was filed on June 27, 2014. In the Proposed Case Management Order submitted by the parties on September 3, 2014, Plaintiff represented that he did "not wish to take any depositions." Plaintiff acknowledged in his opposition papers that he has not taken any depositions or served any discovery requests to date, and Plaintiff has not indicated any intent to do either. In addition, Plaintiff has chosen to defend against Defendants' Motion and present his contentions on the issues raised and, in particular, has not sought a continuance

---

[3]  At the hearing, Plaintiff did not dispute the Defendants' evidence of the potential value of Plaintiff's stock options but contended that they had no value to him because he did not have sufficient funds to exercise the options.

under North Carolina Rule of Civil Procedure 56(f) to delay resolution of Defendants' Motion so that further discovery may be taken.

{18} Plaintiff was deposed by the Defendants on July 30, 2014, and Defendants have indicated they wish to conduct no further depositions or discovery.

{19} The Court held a hearing on the Motion on October 8, 2014. Although the discovery period has not expired, the Court is satisfied that adequate discovery has occurred on the issues raised in Defendants' Motion for the Court to consider the Motion at this time. Plaintiff has presented no basis for the Court to conclude that further discovery may uncover evidence relevant to the issues presented to the Court for determination. *See Brown v. Greene*, 98 N.C. App. 377, 380, 390 S.E.2d 695, 697–98 (1990); *Ussery v. Taylor*, 156 N.C. App. 684, 686, 577 S.E.2d 159, 161 (2003); *Hamby v. Profile Prods., LLC*, 197 N.C. App. 99, 112–14, 676 S.E.2d 594, 602–04 (2009). Accordingly, the Court concludes that *the Motion* is ripe for resolution.

III.

STANDARD OF REVIEW

{20} Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. Rule 56(c) (2014). "A genuine issue of material fact has been defined as one in which 'the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail . . . .'" *Smith v. Smith*, 65 N.C. App. 139, 142, 308 S.E.2d 504, 506 (1983). The Court views the evidence in the light most favorable to Plaintiff and draws all reasonable inferences in favor of Plaintiff. *Whitley v. Cubberly*, 24 N.C. App. 204, 206, 210 S.E.2d 289, 291 (1974).

IV.

ANALYSIS

A. Fraud

{21} "'The essential elements of fraud [in the inducement] are: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" *Tradewinds Airlines, Inc. v. C-S Aviation Servs.*, 733 S.E.2d 162, 168 (N.C. Ct. App. 2012) (citation omitted).

{22} The crux of Plaintiff's fraud claim is his allegation that he forfeited what he claims to be a lucrative severance benefit[4] because Defendants' representations and concealments misled him to believe he would be guaranteed a full seven-year period within which to exercise his stock options or, in the event the Company was sold, that his stock options – with their full seven-year exercise period – would be assumed by any purchaser of the Company.[5]

{23} As an initial matter, the Notice makes plain in clear language that Plaintiff's stock options "may expire [prior to April 8, 2021] pursuant to Section 8(b) of the . . . Stock Option Agreement," (Defs.' Br. Supp. Mot., Ex. 19-2.). Similarly, Section 8(b) of the Stock Option Agreement expressly provides, again in very clear language, that the Company's Board had the discretion to handle Plaintiff's stock options in the event of a change in control in a variety of ways, including by providing that the options "[became] exercisable, realizable or deliverable in whole or in part prior to or upon such Change in Control." Here, it is undisputed that the Company elected to make Plaintiff's and all option holders' outstanding stock options exercisable up until the effective date of change in control, *i.e.*, the day of the closing

---

[4] Plaintiff contends his 18-month severance benefit in the Non-compete Agreement was worth $270,000, arguing that his $15,000/month salary – his salary in effect through early April 2013 – should be multiplied by the Non-compete Agreement's 18 month benefit period to determine the total benefit. Defendant counters by contending that the Non-compete Agreement provides that Plaintiff's waived severance should be based on Plaintiff's salary at the time of termination – *i.e.*, between $1,000/month and $2,000/month – and thus should be valued at no more than $36,000.

[5] Although Plaintiff alleged in his Complaint that he was promised a ten-year exercise period (Compl. ¶ 31), he acknowledged at the hearing, consistent with the language in the Notice of Nonstatutory Stock Option, that the allegedly promised exercise period was only for seven years.

of the sale to Eyenovia. The Court therefore finds as a matter of law that the Company's action was consistent with the Company's obligations under the plain language of Section 8(b) of the Stock Option Agreement.

{24} Plaintiff seeks to avoid dismissal by contending that Defendants fraudulently induced him into entering the Stock Option Agreement. Specifically, Plaintiff contends that Defendants misled him to believe that, despite the plain language to the contrary in the Agreement, his stock options would necessarily survive for up to seven years and any purchaser of the Company would assume his option agreement.

{25} Plaintiff, however, has presented no evidence of a misrepresentation or concealment of material fact of any kind. In particular, Plaintiff does not allege that Defendants told him his stock options would not expire before the end of seven years. Furthermore, he admitted at his deposition that no one at Corinthian told him that a buyer would assume his stock options at any time, (Dep. Vollrath 106:22–107:3), and he cannot point to any affirmative representation by Defendants that Plaintiff's stock options would be assumed in a stock or asset sale of Corinthian.

{26} In short, Plaintiff's alleged proof of fraud consists of nothing more than his assumption that Corinthian would choose not to exercise its rights under the Stock Option Agreement in the fashion that Corinthian ultimately did. Such purported proof – particularly here where Plaintiff, himself a lawyer, freely negotiated the terms of the Agreement with Corinthian, aided and advised by his own separately-retained counsel – is not sufficient to sustain a claim for fraud under North Carolina law.

{27} Based on the foregoing, the Court concludes that there is no genuine issue of material fact as to Plaintiff's fraud claim, and that Defendants Corinthian and Eshelman are entitled to judgment dismissing Plaintiff's fraud claim as a matter of law.

B. Unfair and Deceptive Trade Practices

{28}   As noted above, Plaintiff has denied asserting a UDTPA claim while at the same time alleging that Defendants engaged in unfair and deceptive trade practices and seeking treble damages. Given Plaintiff's allegations, the Court will address Plaintiff's allegations as if he has intended to assert a UDTPA claim.

{29}   "A claim of unfair and deceptive trade practices under section 75-1.1 of the North Carolina General Statutes requires proof of three elements: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant." *Nucor Corp. v. Prudential Equity Grp., LLC*, 189 N.C. App. 731, 738, 659 S.E.2d 483, 488 (2008) (citation omitted).  "'A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,' and a 'practice is deceptive if it has the capacity or tendency to deceive.'" *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 91, 747 S.E.2d 220, 228 (2013).  An award of treble damages is appropriate where a person is damaged by another's unfair or deceptive practices. *Shepard v. Bonita Vista Props., L.P.*, 191 N.C. App. 614, 624, 664 S.E.2d 388, 395 (2008) (citing N.C.G.S. § 75-16 (2013)).

{30}   To the extent Plaintiff has alleged a UDTPA claim, the claim must fail as a matter of law for the following reasons.  First, the alleged conduct  occurred within the scope of an employer-employee relationship, *Buie v. Daniel Int'l Corp.*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119–20 (1982) ("Unlike buyer-seller relationships . . . employer-employee relationships do not fall within the intended scope of [N.C.G.S.] § 75-1.1 . . . .").  Second, the alleged conduct occurred in the context of a sale of securities, *Hajmm Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991) ("'[S]ecurities transactions are beyond the scope of [the UDTPA].'").  Third, the alleged conduct concerned the purely internal conduct of a single business, and thus, was not "in or affecting commerce," *White v. Thompson*, 364 N.C. 47, 53, 691 S.E.2d 676, 680 (2010) ("The General Assembly did not intend for the [UDTPA] to regulate purely internal business operations.").  And finally, Plaintiff has failed to provide evidence of fraud or of any acts otherwise sufficiently "immoral, unethical,

oppressive, unscrupulous" or "deceptive" to sustain a claim under the UDTPA. *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 9, 472 S.E.2d 358, 362 (1996). Accordingly, the Court finds there is no genuine issue of material fact and that Defendants are entitled to summary judgment dismissing Plaintiff's UDTPA claim with prejudice.[6]

C. Piercing the Corporate Veil

{31} Plaintiff seeks to impose liability on Defendant Eshelman under a "piercing the corporate veil" theory. Because Plaintiff's claims for fraud and UDTPA fail as a matter of law, Plaintiff's attempt to pierce Corinthian's corporate veil and impute liability to Defendant Eshelman on those same claims necessarily fails as well.

V.

CONCLUSION

{32} Based on the foregoing, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DISMISSES** Plaintiff's claims in this action **with prejudice**.

**SO ORDERED**, this the 20th day of November 2014.

---

[6] To the extent Plaintiff's claim can be read as one for punitive damages rather than for violation of the UDTPA, the Court concludes that, just as Plaintiff has failed to provide sufficient evidence to create an issue for trial on his purported UDTPA claim, Plaintiff has failed to bring forward sufficient evidence to sustain a claim for punitive damages as a matter of law.