IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-186

Filed: 6 December 2016

Durham County, No. 15 CVS 2638

ELI GLOBAL, LLC and GREG LINDBERG, Plaintiffs

v.

JAMES A. HEAVNER, Defendant

Appeal by plaintiffs from orders entered 24 July 2015 and 13 August 2015 by

Judge Orlando F. Hudson, Jr. in Durham County Superior Court. Heard in the Court

of Appeals 24 August 2016.

> *Smith Moore Leatherwood, LLP, by Matthew Nis Leerberg and Kip David Nelson, and Anderson Tobin, PLLC, by Kendal B. Reed (pro hac vice), for plaintiff-appellants.*
>
> *Hoof Hughes Law, PLLC, by James H. Hughes, and Hutson Law Office, P.A., by Richard M. Hutson, II, for defendant-appellee.*

CALABRIA, Judge.

Plaintiffs appeal from the trial court's dismissal of their action. Because

plaintiffs' complaint stated claims for defamation and unfair and deceptive practices,

we reverse and remand.

## *I. Background*

Greg Lindberg manages Eli Global, LLC (collectively, "plaintiffs"), which

maintains its principal office in Durham, North Carolina. Plaintiffs' business

involves purchasing and investing in other companies and their assets. James A. Heavner ("defendant") owns the following affiliated companies: University Directories, LLC; Vilcom, LLC; Vilcom Interactive Media, LLC; Vilcom Properties, LLC; and Vilcom Real Estate Development, LLC (collectively, "the UD Entities"). The UD Entities are based in Chapel Hill, North Carolina.

In 2013, defendant retained an investment banker for the purpose of selling the UD Entities as a going concern. Defendant and Eli Global engaged in preliminary sale negotiations, during which Eli Global was permitted to conduct a due diligence analysis of the companies. However, due diligence revealed that the UD Entities were performing poorly and would require a significant capital investment in order to become financially viable. As a result, Eli Global did not make a purchase offer.

Thereafter, another one of Lindberg's companies, UDX, LLC ("UDX"),[1] purchased and acquired from the lender-bank certain commercial loans that had been executed by defendant and the UD Entities. As owner of the loans, UDX then provided written notices of default and demanded payment. Since the UD Entities were unable to pay, they filed for Chapter 11 bankruptcy protections on 24 October 2014.

That day, defendant published a press release, which stated in full:

> CHAPEL HILL, N.C. October 24, 2014–University
> Directories, LLC filed for protection today under Chapter

---

[1] UDX is not a party to this action.

11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Middle District of North Carolina to ward off a hostile takeover of the company.

Prior to filing the petition, University Directories had retained an investment banker and after negotiating with a number of potential purchasers, had chosen Eli Global, LLC and signed a letter of intent with Greg Lindberg, Eli Global [sic] president. University Directories' lender, Harrington Bank, was aware of the impending sale and expected the loans to be paid in full at closing–a normal course of events.

During the due diligence phase of the sales transaction, Harrington Bank was acquired by Bank of North Carolina. BNC immediately sold its University Directories loans and other loans to entities related to University Directories to UDX, LLC, a new entity created by Lindberg.

UDX LLC, having acquired the loans, suddenly and without warning gave notice of default and disposition of collateral, demanding ownership of University Directories for its own operations. In addition, Lindberg and UDX, LLC gave notice that it [sic] intended to declare other loans in default, jeopardizing assets owned by companies related to University Directories.

While the business court might provide relief from such a hostile takeover, it does not do so quickly. In order to protect the business and its employees, University Directories made the decision to file a Chapter 11 petition, along with its related entities obligated on the various notes. Thus, the company will be in protective custody of the courts so that it can continue business operations and pursue a sale of the 40-year-old business to a qualified buyer, thereby protecting its employees, customers, and creditors.

University Directories is owned by James A. Heavner and several of the company's managers. Heavner said of the

> filing, "This Company has never missed a bank payment and is current on every loan. We chose to take this action with reluctance because it may cause anxiety among our stakeholders. Yet, in 50 years of owning, operating and selling over three dozen companies, mostly in the media business, we have never encountered anything like this. We will certainly litigate this matter and, in the meantime, the courts are here to protect it. It is an extraordinary situation when potential business partners turn out to be predators."

> University Directories, LLC; Print Shop Management, LLC; Vilcom LLC; Vilcom Interactive Media, LLC; Vilcom Properties, LLC; and Vilcom Real Estate Development are all companies in this filing and are located at 88 Vilcom Center Drive, Suite 160, Chapel Hill, NC. James A. Heavner is a principal of each company. University Directories, founded in 1974, is a collegiate marketing and media company. Vilcom Interactive Media owns and operates WCHL, a radio station broadcasting from Chapel Hill and "Chapelboro," an on-line [sic] news and marketing service. Vilcom Real Estate Development owns properties in North Carolina and South Carolina. Print Shop operates a retail store in Chapel Hill.

Several local media outlets, including *The News & Observer*, *The Triangle Business Journal*, and *Chapelboro*, subsequently published articles based on defendant's press release. Defendant also told a *Chapelboro* writer that he "was surprised when the potential partnership with Eli Global turned from a sale to a takeover[,]" and "[w]hat we thought were going to be honorable purchasers of a good company turned out to be predatory in ways none of us could have imagined."

On 23 April 2015, plaintiffs filed a complaint against defendant, asserting claims for defamation, libel, libel *per se*, slander, slander *per se*, and unfair and

deceptive acts or practices. Without filing an answer, on 18 June 2015, defendant moved to dismiss plaintiffs' complaint for failure to state a claim upon which relief may be granted, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2015). On 24 July 2015, the trial court entered an order dismissing plaintiffs' complaint and granting defendant's oral motion for attorneys' fees. *See* N.C. Gen. Stat. § 75-16.1 (allowing the judge presiding over an action for unfair and deceptive acts to award "reasonable" attorneys' fees to the "prevailing party" upon a finding that the party asserting the claim "knew, or should have known, the action was frivolous and malicious"). On 3 August 2015, plaintiffs filed a motion for new trial, motion for reconsideration, and request for ruling on objections to defendant's motion to dismiss, pursuant to N.C. Gen. Stat. § 1A-1, Rules 59 and 60. Following a hearing, on 13 August 2015, the trial court entered: (1) an amended dismissal order awarding additional attorneys' fees to defendant and including further findings of fact on that issue; and (2) an order denying plaintiffs' motion for new trial, motion for reconsideration, and request for ruling on objections. Plaintiffs timely appealed from all three of the trial court's orders.

## II. Analysis

### A. Standard of Review

"A motion made pursuant to Rule 12(b)(6) tests the legal sufficiency of the plaintiff's complaint." *Andrews v. Elliot*, 109 N.C. App. 271, 274, 426 S.E.2d 430, 432

(1993) (citation omitted). "Dismissal under Rule 12(b)(6) is proper when on its face the complaint reveals either no law supports the plaintiff's claim or the absence of fact sufficient to make a good claim, or when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Id.* (citation omitted). Accordingly, a plaintiff's complaint should not be dismissed "unless it affirmatively appears [the] plaintiff is entitled to no relief under any state of facts which could be presented in support of the claim." *Id.* (citations and quotation marks omitted).

**B. Defamation**

Plaintiffs first contend that the trial court erred in dismissing their complaint for failure to state a claim for defamation. We agree.

An action for defamation may be maintained by a person or a business entity. *See R.H. Bouligny, Inc. v. United Steelworkers of Am.,* 270 N.C. 160, 168, 154 S.E.2d 344, 352 (1967) (explaining that a corporation may "be injured in its credit, in its business good will, or in its relations with its employees . . . [and] its corporate nature is not a bar to its recovery of damages from the wrongdoer"). "In order to recover for defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002) (citation omitted), *appeal dismissed and disc. review denied*, 357 N.C. 163, 580 S.E.2d 361, *cert. denied,* 540 U.S. 965, 157 L. Ed. 2d 310

(2003). "[D]efamation includes two distinct torts, libel and slander." *Tallent v. Blake*, 57 N.C. App. 249, 251, 291 S.E.2d 336, 338 (1982). Generally, written defamation constitutes libel, while oral defamation is slander. *Id.* But "when defamatory words are spoken with the intent that the words be reduced to writing, and the words are in fact written, the publication is both slander and libel." *Clark v. Brown*, 99 N.C. App. 255, 261, 393 S.E.2d 134, 137 (citation omitted), *disc. review denied*, 327 N.C. 426, 395 S.E.2d 675-76 (1990).

North Carolina recognizes three categories of libel: (1) libel *per se*, which covers publications that are "obviously defamatory"; (2) "publications which are susceptible of two reasonable interpretations, one of which is defamatory and the other is not"; and (3) libel *per quod*, which includes publications that are "not obviously defamatory, but which become so when considered in connection with innuendo, colloquium and explanatory circumstances." *Ellis v. Northern Star Co.*, 326 N.C. 219, 223, 388 S.E.2d 127, 129-30 (citation omitted), *reh'g denied*, 326 N.C. 488, 392 S.E.2d 89 (1990). "Slander is actionable either *per se* or *per quod*." *Mkt. Am., Inc. v. Christman-Orth*, 135 N.C. App. 143, 151, 520 S.E.2d 570, 577 (1999) (citation omitted), *disc. review denied*, 351 N.C. 358, 542 S.E.2d 213 (2000).

In the instant case, the complaint alleged that defendant made the following false statements "concerning [p]laintiffs":

> i. "In addition, Lindberg and UDX, LLC gave notice that it [sic] intended to declare other loans in default, jeopardizing

> assets owned by companies related to University
> Directories."
> ii. That [p]laintiffs attempted "a hostile takeover."
> iii. "It is an extraordinary situation when potential
> business partners turn out to be predators."
> iv. "What we thought were going to be honorable
> purchasers of a good company turned out to be predatory
> in ways none of us could have imagined."
> v. "[I] was surprised when the potential partnership with
> Eli Global turned from a sale to a takeover."

The full press release was also included in the body of the complaint. Plaintiffs asserted that "[i]n addition to being false, these statements are defamatory in that they tend to impeach [p]laintiffs in their business and otherwise tend to subject [p]laintiffs to ridicule, contempt, or disgrace." The complaint further alleged that defendant's "statements especially harm and disparage [p]laintiffs due to the nature of [p]laintiffs' business in negotiating the purchase of other businesses and their assets." According to plaintiffs, defendant "intended these statements to be reduced to writing, and such statements were in fact written" and published as a press release "to several media outlets, . . . [which] in turn published articles based" thereon. Plaintiffs alleged that as a result of defendant's statements, "third parties are deterred from negotiating and closing transactions" with them. Thus, the complaint set forth the elements of a *prima facie* case for defamation. *See Boyce & Isley,* 153 N.C. App. at 29, 568 S.E.2d at 897.

On appeal, plaintiffs argue that defendant's statements are actionable as defamation *per se*, defamation *per quod*, and under the second class of libel. However,

the complaint contained no allegation that defendant's statements are "susceptible of two meanings, one defamatory, and that the defamatory meaning was intended and was so understood by those to whom the publication was made." *Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 317, 312 S.E.2d 405, 408, *reh'g denied*, 310 N.C. 749, 315 S.E.2d 704, *cert. denied*, 469 U.S. 858, 83 L. Ed. 2d 121 (1984). Consequently, plaintiffs' complaint "failed to bring the [statements] complained of within the second class of libel[.]" *Id.* at 316, 312 S.E.2d at 408 (citations omitted). We next consider whether plaintiffs' complaint stated a claim for defamation *per se*.

Whether a statement is defamatory *per se* is a question of law to be decided by the trial court. *See Ellis*, 326 N.C. at 224, 388 S.E.2d at 130. The court must consider the full context of the statement, viewing the words "within the four corners" of the publication and interpreting them "as ordinary people would understand" them. *Renwick*, 310 N.C. at 319, 312 S.E.2d at 410. In order to be actionable *per se*, the words "must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided." *Boyce & Isley*, 153 N.C. App. at 30-31, 568 S.E.2d at 898-99 (citation omitted). "In an action for libel or slander *per se*, malice and damages are deemed presumed by proof of publication, with no further evidence required as to any resulting injury." *Id.* at 30, 568 S.E.2d at 898 (citation omitted).

"It is well settled that false words imputing to a merchant or business man conduct derogatory to his character and standing as a business man and tending to prejudice him in his business are actionable, and words so uttered may be actionable *per se*." *Badame v. Lampke*, 242 N.C. 755, 757, 89 S.E.2d 466, 468 (1955). Our Supreme Court has explained that

> in order to be actionable without proof of special damage, the false words (1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business. That is to say, it is not enough that the words used tend to injure a person in his business. To be actionable *per se*, they must be uttered of him in his business relation. Defamation of this class ordinarily includes charges made by one trader or merchant tending to degrade a rival by charging him with dishonorable conduct in business.

*Id.* (citations omitted); *see also Ellis*, 326 N.C. at 224, 388 S.E.2d at 130 (holding that a letter accusing the plaintiff-company of committing "an unauthorized act" on behalf of the defendant-company was libelous *per se* because it "impeache[d the plaintiff] in its trade as a food broker"); *Ausley v. Bishop*, 133 N.C. App. 210, 215, 515 S.E.2d 72, 76 (1999) (determining that the plaintiff's allegations that the defendant, a former employee who "was launching his own business as an appraiser," had engaged in theft and loan fraud "undoubtedly had the capacity to harm [the] defendant in his trade or profession").

As stated in their complaint, plaintiffs' business is "to invest in companies as a going concern, which at times includes negotiating to purchase other businesses or

their assets." Indeed, Eli Global was a prospective buyer of the UD Entities before due diligence revealed their poor financial health. Accordingly, defendant's characterization of plaintiffs as "potential business partners [who] turn[ed] out to be predators" impugned them in their "special trade or occupation." *Badame*, 242 N.C. at 757, 89 S.E.2d at 468.

Defendant asserts that pursuant to this Court's decision in *Nucor Corp. v. Prudential Equity Grp., LLC*, 189 N.C. App. 731, 659 S.E.2d 483 (2008), his statements are not defamatory *per se* because they do not allege any "illegal or wrongful activity" by plaintiffs. *See id.* at 737, 659 S.E.2d at 487 (distinguishing *Ellis* and *Ausley* on the grounds that those cases involved allegations of "specific wrongful acts," whereas "here, no specific acts on the part of [the] plaintiff have been alleged"). In *Nucor*, the plaintiff-manufacturer alleged that the following statements, published by the defendant-financial company in an email sent to investors nationwide, were libelous *per se*:

> Alienated customers may encourage Nippon Steel, Brazil's CSN or some of Nucor's sixteen plant managers to build new steel companies in addition to Thyssen, Severcorr, or reborn Weirton Steel adding ten million tons. Alienated customers may file antitrust lawsuits as has been done in the electrode, container board OSB, or other sectors. A clever attorney could make hay from trebled damages on Nucor's $2.6 billion pre-tax earnings[, and] Nucor needs to wake up from its monopoly dreams and get back to reality in our view.

*Id.* (alteration in original). The trial court granted the defendants' motion to dismiss, and we affirmed on appeal.

Defendant's reliance on *Nucor* is misplaced for several significant reasons. First, not only did the *Nucor* publication fail to assert "any illegal or wrongful activity" by the plaintiff, it failed to assert *any* statement of verifiable fact. We explained,

> as to "alienated customers" the publication notes that "[a] clever attorney could make hay from trebled damages on Nucor's $2.6 billion pre-tax earnings." We do not find any part of this statement, which does not allege specific wrongful conduct on the part of the plaintiff and uses such rhetorical language as "could make hay[,]" to be defamatory. The second statement, "Nucor needs to wake up from its monopoly dreams and get back to reality in our view[,]" is also an opinion statement without any alleged facts on which we could find grounds for a claim of libel *per se*.

*Id.* at 737-38, 659 S.E.2d at 487 (alterations in original) (internal citations omitted). By contrast, defendant's assertion that Lindberg and UDX "gave notice that [they] intended to declare other loans in default, jeopardizing assets owned by companies related to University Directories" is a statement of verifiable fact which may be proven true or false. *Cf. Daniels v. Metro Magazine Holding Co.*, 179 N.C. App. 533, 539, 634 S.E.2d 586, 590 (2006) ("If a statement cannot reasonably be interpreted as stating actual facts about an individual, it cannot be the subject of a defamation suit." (citation, brackets, and quotation marks omitted)), *appeal dismissed and disc. review*

*denied*, 361 N.C. 692, 654 S.E.2d 251 (2007). Although some of defendant's remarks may appear to express an opinion, a person "cannot preface an otherwise defamatory statement with 'in my opinion' and claim immunity from liability[.]" *Id.*

Second, in *Nucor*, we declined to consider paragraphs of the plaintiff's complaint that provided further details about the antitrust lawsuits filed in other sectors because such "explanatory circumstances" may not be considered on a claim for libel *per se*. 189 N.C. App. at 737, 659 S.E.2d at 487 ("Words which are libelous *per se* do not need an innuendo, and, conversely, words which need an innuendo are not libelous *per se*." (citation omitted)). Defendant's press release requires no such explanation. By stating "[w]hat we thought were going to be honorable purchasers of a good company . . . [,]" defendant clearly means that plaintiffs are *not*, a harmful imputation given that plaintiffs' particular trade is buying and investing in other businesses. *See Badame*, 242 N.C. at 757, 89 S.E.2d at 468 (noting that defamation *per se* in the business context "ordinarily includes charges made by one trader or merchant tending to degrade a rival by charging him with dishonorable conduct").

Third, viewing the *Nucor* publication "as a whole," we concluded that the "overall import of the document was not derogatory of [the] plaintiff." 189 N.C. App. at 738, 659 S.E.2d at 487 (observing that "[t]he publication also states that 'We believe Nucor is a fine company, and we are not aware of any "company-specific" flaw or blemish.' "). The same cannot be said here. "One does not have to 'read between

the lines' to discover the [press release's] defamatory content." *Boyce & Isley*, 153 N.C. App. at 32, 568 S.E.2d at 899 (citing *Renwick*, 310 N.C. at 318, 312 S.E.2d at 409).

Defendant, citing several business dictionaries for support, argues that "predator" and "hostile takeover" are "recognized business terms" that accurately describe plaintiffs and the parties' business transaction; therefore, he contends that his statements are true and cannot serve as the basis of a defamation claim. However, defendant's reliance on extrinsic sources is premature, given that "on a Rule 12(b)(6) motion, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]" *Andrews*, 109 N.C. App. at 275, 426 S.E.2d at 432 (citation, quotation marks, and brackets omitted).

Viewing defendant's remarks "within the four corners" of the press release and "as ordinary people would understand" them, *Renwick*, 310 N.C. at 319, 312 S.E.2d at 410, we do not believe that the average readers of *Chapelboro* and *The News & Observer* would read "predator" to mean "a company that buys or tries to buy another company that is in a weaker financial position," as defendant contends on appeal. Even assuming, *arguendo*, that readers of *The Triangle Business Journal* might immediately recognize this business definition, defendant's defamatory meaning is nevertheless revealed by his statements that he has "never encountered anything like

this" and "will certainly litigate this matter." *Cf. Boyce & Isley*, 153 N.C. App. at 31, 568 S.E.2d at 899 (rejecting the defendants' assertion that "the average person is familiar with the concept of contingency fees in the context of large class-action lawsuits" and holding that their television advertisement alleging that a political opponent "charg[ed] . . . more [per hour] than a policeman's salary" was defamatory *per se*).

We are similarly unpersuaded by defendant's alternative argument that his remarks are protected as "rhetorical hyperbole," a statement so exaggerated or outlandish that "no reasonable reader would believe [it] to be literally true." *Craven v. Cope*, 188 N.C. App. 814, 818, 656 S.E.2d 729, 733 (2008). Defendant's press release was plainly intended to assuage stakeholders' anxiety after the UD Entities filed for Chapter 11 bankruptcies. Considering defendant's statements in this context, their defamatory tenor is even more evident. *See Renwick*, 310 N.C. at 319, 312 S.E.2d at 410.

We hold that plaintiffs stated a claim for libel and slander *per se* sufficient to withstand defendant's motion to dismiss. Notably, "[w]hether or not plaintiffs may ultimately prevail on these claims is not a matter before this Court." *Boyce & Isley*, 153 N.C. App. at 35, 568 S.E.2d at 901. At this early stage in the proceedings, however, they have met their low burden of proving that they are "entitled to offer

evidence to support the[ir] claims[.]" *Andrews*, 109 N.C. App. at 275, 426 S.E.2d at 432.

## C. Unfair and Deceptive Practices

Plaintiffs next contend that the trial court erred by dismissing their claims for unfair and deceptive practices. We agree.

N.C. Gen. Stat. § 75-1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." A claim for unfair and deceptive practices requires proof of: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant." *Nucor*, 189 N.C. App. at 738, 659 S.E.2d at 488 (quoting *Craven*, 188 N.C. App. at 819, 656 S.E.2d at 733). "[A] libel *per se* of a type impeaching a party in its business activities is an unfair or deceptive act in or affecting commerce in violation of [N.C. Gen. Stat.] § 75-1.1, which will justify an award of damages . . . for injuries proximately caused." *Ellis*, 326 N.C. at 226, 388 S.E.2d at 131 (citation omitted).

As previously discussed, plaintiffs stated a claim for defamation *per se* based on defendant's statements impeaching their business reputation. Regarding plaintiffs' claim for unfair and deceptive practices, the complaint further alleges that defendant's "false and defamatory statements constitute an unfair or deceptive act or practice in or affecting commerce which proximately caused actual injury to

[p]laintiffs in violation of section 75-1.1 of the North Carolina General Statutes." Because the trial court's dismissal of this claim was predicated on its determination that plaintiffs had failed to state a claim for defamation, we conclude that the trial court also erred in dismissing plaintiffs' claim for unfair and deceptive practices.

Additionally, N.C. Gen. Stat. § 75-16.1 provides that a judge presiding over an action for unfair and deceptive practices may, in certain instances, award "reasonable" attorneys' fees to "the prevailing party." Having determined that the trial court erred by dismissing plaintiffs' claim for unfair and deceptive practices, we necessarily conclude that the court also erred by awarding attorneys' fees to defendant.

### III. Conclusion

Plaintiffs' complaint set forth the elements and necessary factual allegations to support claims for defamation *per se* and unfair and deceptive practices; therefore, the trial court erred by granting defendant's motion to dismiss and in awarding attorneys' fees to defendant. Having so concluded, we need not consider plaintiffs' remaining arguments.

REVERSED AND REMANDED.

Judges DAVIS and TYSON concur.